UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD WHITTINGTON,**

    **Plaintiff,**

    v.

**NATIONAL SEATING &
MOBILITY, INC.,**

    **Defendant.**

Case No. 2:24-cv-3226
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

**OPINION AND ORDER**

This matter is before the Court on Defendant National Seating & Mobility, Inc.'s ("NSM") Motion to Dismiss For Failure to State a Claim. (Mot., ECF No. 5.) Plaintiff Richard Whittington, who is proceeding without the assistance of counsel, opposed the Motion. (Opp., ECF No. 8.) NSM replied in support of its Motion. (Reply, ECF No. 10.) For the reasons below, the Court **GRANTS** NSM's Motion to Dismiss (ECF No. 5).

**I.  BACKGROUND**

Mr. Whittington filed his *pro se* Complaint against NSM originally in the Licking County Court of Common Pleas. (*See* Compl., ECF No. 3.) Soon after, NSM removed the case to this Court. (ECF No. 1.)

The Complaint alleges that Mr. Whittington was twice injured by his electric wheelchair. (Compl.) Mr. Whittington alleges that in May 2023 he obtained a Jazzy EVO 613 electric wheelchair from NSM. (*Id.* ¶ 1.) NSM is a supplier of custom mobility solutions, including power and manual wheelchairs. (Mot., PageID 27.) A few months after obtaining his wheelchair, he alleges that the wheelchair malfunctioned by turning left on its own and causing damages. (Compl., ¶ 2.) Then he alleges that the wheelchair fell over with him in it on West Main Street in Newark,

1

Ohio in February 2024. (*Id.* ¶ 4.) He claims that he required knee surgery after various x-rays and magnetic resonance imaging ("MRI") procedures showed damage to his knee and spine. (*Id.* ¶¶ 3–4.) He seeks damages of $20,000,000 for the injuries to his left knee, and for his pain, suffering, and the mental anguish caused by the allegedly defective wheelchair. (*Id.* PageID 22–23.)

NSM moves to dismiss the Complaint and argues that Mr. Whittington failed to plead a claim for relief against NSM as the supplier or manufacturer of the allegedly defective wheelchair under the Ohio Products Liability Act. (Mot., PageID 30–31.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissing actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard from *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

A plaintiff proceeding without counsel must still satisfy the basic pleading requirements but is entitled to a liberal construction of his or her pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (describing the less stringent pleading requirements for *pro se* litigants); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (requiring *pro se* plaintiffs to satisfy "basic pleading essentials").

But the more lenient standard has limits. *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012). Courts "should not have to guess at the nature of the claim asserted." *Id.* (citing *Wells*, 891 F.2d at 594). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### III.   ANALYSIS

Mr. Whittington's Complaint references "product liability law" and claims that manufacturers should assume financial responsibility for injuries and damages caused by their defective products. (Compl., PageID 22.) The Court construes the Complaint as one bringing a claim under the Ohio Products Liability Act ("OPLA"). The OPLA applies to "any recovery of compensatory, punitive, or exemplary damages based on a product liability claim." *Hendricks v. Pharmacia Corp.*, No. 2:12-cv-00613, 2014 U.S. Dist. LEXIS 76125, at *8 (S.D. Ohio June 4, 2014) (Deavers, M.J.) (quoting *Tolliver v. Bristol-Myers Squibb, Co.*, No. 1:12 CV 00754, 2012 U.S. Dist. LEXIS 105518 (N.D. Ohio July 30, 2012)). A product liability claim is defined by statute as one that "seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question" allegedly resulting from a "manufacturing or design defect, inadequate warning, or nonconformance with manufacturer representations." *Id.* (quoting Ohio Rev. Code § 2307.71(A)(13)).

The OPLA treats manufacturers and suppliers differently. *Compare* Ohio Rev. Code § 2307.73 (describing when a manufacturer is subject to liability) *with* Ohio Rev. Code § 2307.78 (outlining when a supplier is subject to liability). Since Mr. Whittington does not make clear whether he seeks to hold NSM liable as a manufacturer, or as a supplier, the Court will analyze both types of claims.

3

### A. Mr. Whittington failed to state a product liability claim against NSM as a manufacturer.

To survive NSM's Motion to Dismiss, Mr. Whittington's product liability claim against NSM as a manufacturer must fall under one of the four types of claims permitted by the OPLA: (1) manufacturing defect, Ohio Revised Code § 2307.74; (2) design defect, Ohio Revised Code § 2307.75; (3) inadequate warning or instructions, Ohio Revised Code § 2307.76; and (4) nonconformance with manufacturers' representations, Ohio Revised Code § 2307.77. *Tolliver*, 2012 U.S. Dist. LEXIS 105518, at *7 (explaining that plaintiffs should clarify which OPLA provision governs the claims in their complaint).

Even construing the allegations in his favor, the Court finds that Mr. Whittington failed to state a plausible claim for relief under any of the four applicable provisions.

### i. Manufacturing Defect

To plead a manufacturing defect claim under the OPLA, Mr. Whittington must allege that: "(1) [t]here was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiffs' injuries or loss." *Saraney v. TAP Pharm. Prods.*, No. 1:04 CV 02026, 2007 U.S. Dist. LEXIS 3113, at *20 (N.D. Ohio Jan. 16, 2007) (citation omitted). "At a minimum, courts have required allegations that the defendant manufactured the product, that the product was used by the plaintiff, that the product failed while being used by the plaintiff, and that the portion of the product that failed could be identified and is so identified in the complaint." *Barreca v. AngioDynamics, Inc.*, No. 4:15CV1111, 2015 U.S. Dist. LEXIS 114000, at *7 (N.D. Ohio Aug. 27, 2015).

NSM argues that Mr. Whittington cannot meet the first element of a manufacturing defect claim in part because Mr. Whittington fails to allege that NSM is the manufacturer of his defective

4

wheelchair. (Mot., PageID 31.) His Complaint states that he "go[t] the Jazzy EVO 613 from National Seating & Mobility. (Compl. ¶ 1.) And his memorandum in opposition explains that NSM "did not fix my power manual wheelchair." (Opp., PageID 44.) But neither filing alleges that NSM designed, formulated, produced, created, made, constructed, assembled or rebuilt the wheelchair. *See* Ohio Rev. Code § 2307.71(A)(9) (defining "manufacturer").

Mr. Whittington does not allege a specific defect in the wheelchair, or that the defect existed at the time the wheelchair allegedly left NSM's hands. (Mot., PageID 32.) He states only that the wheelchair turned left on its own and fell over with him in it. (Compl., ¶¶ 2–4.) But he does not identify what part of the wheelchair failed or malfunctioned. (*See id.*) His memorandum in opposition references a knob, but it is unclear whether he is alleging that the knob was defective or led to his injuries. (Opp., PageID 44 (stating that NSM "did not fix his wheelchair and that "I have take the knob to my right").) Nor does he allege how the defect was the proximate cause of his injuries. He merely asserts in a conclusory manner that the wheelchair began to malfunction. (Compl., ¶ 2 (stating that "the jazzy EVO 613 become a malfunction.").) Such conclusory pleadings will not survive a motion to dismiss, even under the less stringent standard for *pro se* litigants. *Hendricks,* U.S. Dist. LEXIS 76125, at *24–25. Accordingly, Mr. Whittington has failed to sufficiently plead a manufacturing defect claim under Ohio Revised Code § 2307.74.

### ii. Design Defect

To prevail on design defect claim, Mr. Whittington must establish that: (1) the wheelchair was defective; (2) the defect existed when the wheelchair left NSM's control; and (3) the defect directly and proximately caused his injury. *See Butts v. OMG, Inc.*, 612 F. App'x 260, 262 (6th Cir. 2015). "[A] product is defective in design or formulation if, at the time it left control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the

5

benefits associated with that design or formulation." Ohio Rev. Code § 2307.75(A). For a risk to be foreseeable, the risk of harm must be both:

> (a) "associated with an intended or reasonably foreseeable use, modification, or alteration of a product in question" and
>
> (b) "a risk that the manufacturer in question should recognize" while exercising (i) "the attention, perception, memory, knowledge, and intelligence that a reasonable manufacturer should possess" along with (ii) any "superior attention . . . that the manufacturer possesses."

*Id.* § 2307.71(A)(6).

Turning to the first element. Mr. Whittington has not sufficiently pled that the wheelchair was defective. Like "manufacturing defect claims, design defect claims require that the complaint contain factual allegations as to which portions of the product failed." *Grubbs v. Smith & Nephew, Inc.*, No. 1:19-cv-248, 2020 U.S. Dist. LEXIS 162317, at *13 (S.D. Ohio Sep. 4, 2020) (McFarland, J.). Allegations identifying the specific defect are necessary to "elevate [the] allegations beyond 'threadbare recitals or formulaic recitations of the elements of a claim.'" *Id.* (quoting *Marcum v. Depuy Orthopedics, Inc.*, No. 1:12-cv-834, 2013 U.S. Dist. LEXIS 62875, at *13 (S.D. Ohio May 2, 2013) (Black, J.)).

As discussed above, Mr. Whittington does not identify the specific defect of the wheelchair other than it generally malfunctioned and turned left on its own. (Compl., ¶¶ 2–4.) A product is defective in design only if the foreseeable risks exceeded the benefits of the product's design or formulation. *See* Ohio Rev. Code § 2307.75(A). Mr. Whittington does not allege that he used the wheelchair in a foreseeable capacity, such that the manufacturer should have known that the risks associated with the wheelchair's design exceeded the benefits of the design. *See id.* Thus, for the same reasons that his manufacturing defect claim failed, so too must his design defect claim fail.

6

### iii. Inadequate Warning

A product is defective because of an inadequate warning or instruction, if when it left the manufacturer's control, both of the following applied:

(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages; [and]

(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

Ohio Rev. Code § 2307.76(A)(1), (A)(2) (applying to post-marketing warning or instructions).

To prevail on a failure to warn claim, Mr. Whittington must prove: "(1) a duty to warn against reasonably foreseeable risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach." *Bowles v. Novartis Pharms. Corp.*, No. 3:12-cv-145, 2013 U.S. Dist. LEXIS 134350, at *22 (S.D. Ohio Sep. 19, 2013) (quotation omitted). A warning is adequate when it "reasonably discloses all inherent risks and if the product is safe when used as directed." *Rees v. W.M. Barr & Co.*, No. 2:15-cv-2821, 2017 U.S. Dist. LEXIS 161573, at *9 (S.D. Ohio Sep. 29, 2017) (Smith, J.) (expounding that a warning should not be evaluated on its content alone, it may be inadequate if it is in an obscure place). "Ultimately, when an adequate warning is given, the seller may assume that the warning will be read and followed and the product shall not be considered defective based on a failure to warn." *Id.* (citing *Rheinfrank v. Abbott Labs., Inc.*, 119 F. Supp. 3d 749, 782 (S.D. Ohio 2015) (Dlott, J.)).

The Court liberally construes Mr. Whittington's Complaint as alleging that NSM was the manufacture of his wheelchair and had a duty to warn him against reasonably foreseeable risks. The risk of sudden turns and of falling from the wheelchair are risks plausibly included in the

7

category of reasonably foreseeable risks. But even when liberally construing the Complaint and assuming NSM manufactured the wheelchair, the Court cannot conclude that Mr. Whittington sufficiently alleged that NSM breached a duty to warn. To show breach, Mr. Whittington must allege that his wheelchair contained inadequate warnings or instructions. But Mr. fails to allege either that the wheelchair did not contain a warning, or that the warning was inadequate. He does not allege deficiencies in the content, or placement of an allegedly inadequate warning label. Without such allegations, the Court cannot assess whether the wheelchair failed to include a warning label, or whether the warning inadequately disclosed all known risks. Nor can the Court determine whether Mr. Whittington used the wheelchair as directed. Thus, Mr. Whittington has not pleaded a plausible failure to warn claim under Ohio Revised Code § 2307.76.

### iv. Nonconformance with the Manufacturer's Representations

A claim for nonconformance with the manufacturer's representations arises this if a product "did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer." Ohio Rev. Code § 2307.77. A "representation" is defined as "an express representation of a material fact concerning the character, quality, or safety of a product." Ohio Rev. Code § 2307.71(A)(14). To adequately plead such a claim, Mr. Whittington must show that (1) the manufacturer made a representation about a material fact relating to the character or quality of the wheelchair; (2) the product did not conform to that representation; (3) Mr. Whittington justifiably relied on that representation; and (4) his reliance on the representation was the direct and proximate cause of his injuries. *See Marcum*, 2013 U.S. Dist. LEXIS 62875, at *15–16; *see also Bowles*, 2013 U.S. Dist. LEXIS 134350, at *37 (citation omitted).

NSM argues that Mr. Whittington failed to plead that NSM made a representation about the character or quality of the wheelchair, or that he detrimentally relied on that representation.

8

(Mot., PageID 34.) The Court agrees. Since Mr. Whittington identifies no representations made by NSM regarding the wheelchair, nor how the wheelchair failed to conform to the representation, his claim for nonconformance must fail as a matter of law.

Having reviewed each of the four potential avenues for recovery against NSM as a manufacturer under the OPLA, the Court finds that Mr. Whittington has not pled sufficient facts to state a plausible claim for relief under Ohio Revised Code § 2707.73. The Court turns now to whether Mr. Whittington may proceed on his claim against NSM as a supplier under the OPLA.

### B. Mr. Whittington failed to state a product liability claim against NSM as a supplier.

Even if NSM did not manufacture or design the allegedly defective wheelchair, it may still be held liable as a "supplier" under Ohio Revised Code § 2707.78. A "supplier" is defined as one who "sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce" or "repairs, installs, or maintains any aspect of a product that allegedly causes harm." Ohio Rev. Code § 2307.71(A)(15)(a). Reading Mr. Whittington's Complaint liberally, the Court finds that he plausibly alleged that NSM is the supplier of his allegedly defective wheelchair when he stated that he "go[t]" the "Jazzy EVO 613" from NSM. (Compl., ¶ 1.) He also claims that NSM "fix[ed]" his wheelchair. (Opp., PageID 44.)

The OPLA recognizes two ways—directly or derivatively—that a supplier may be held liable. *See* Ohio Revised Code § 2307.78(A) (direct liability); § 2307.78(B) (derivative liability). NSM argues that Mr. Whittington's claims must fail because he cannot allege that NSM is directly or derivatively liable as a supplier under the OPLA. (Mot., PageID 35–37.)

#### i. Direct Supplier Liability

A supplier may be directly liable if it was negligent and that negligence was a proximate cause of the plaintiff's harm, or if the product did not conform (when it left the control of the

9

supplier) to a representation made by the supplier, and the representation and the failure to conform proximately caused the plaintiff's harm. *Id.* § 2307.78(A)(1), (2). To show that NSM was negligent under § 2307.78(A)(1), Mr. Whittington must show that "the defendant owed [him] a duty, the defendant breached that duty, and that the injury proximately resulted from the breach." *Gordon v. B. Braun Med. Inc.*, No. 1:19-cv-121, 2020 U.S. Dist. LEXIS 53598, at *18 (S.D. Ohio Mar. 27, 2020) (Black, J.) (citing *Brentar v. Ford Motor Co.*, No. 09-CV-2685, 2010 U.S. Dist. LEXIS 80470, at *21 (N.D. Ohio Aug. 10, 2010)). A supplier may be liable for negligence "if it knew or had reason to know of the product defect and failed to provide a warning of the defect." *Brentar*, 2010 U.S. Dist. LEXIS 80470, at *21–22.

As discussed above, when analyzing the failure to warn theory of manufacturer liability, the Court construes Mr. Whittington's Complaint as alleging that the supplier had a duty to warn him against reasonably foreseeable risks. (*See supra*, Section III(A)(iii).) The risk of falling from his wheelchair is reasonably foreseeable. (*Id.*) But even under a liberal construction, the Complaint does not sufficiently allege that NSM as the purported supplier breached a duty to Mr. Whittington, or that NSM's breach proximately caused his injuries. Since Mr. Whittington does not allege a particular defect, the Court cannot infer that NSM "knew or had reason to know of the product defect" such that it failed to provide a warning of that defect. *See Brentar*, 2010 U.S. Dist. LEXIS 80470, at *21–22. Accordingly, Mr. Whittington has not stated a plausible claim of supplier negligence under Ohio Revised Code § 2307.78(A)(1).

To prevail under a direct failure to conform products liability theory against a supplier, a plaintiff must show that "the product in question did not confirm . . . to a representation made by that supplier in question, . . . and the representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages." Ohio Rev. Code

§ 2307.78(A)(2). A representation requires "some form of express conduct by the seller to maintain a cause of action based on a supplier's misrepresentation." *Brentar*, 2010 U.S. Dist. LEXIS 80470, at *25 (citing *Tekavec v. Van Waters & Rogers, Inc.*, 12 F. Supp. 2d 672, 680 (N.D. Ohio 1998)).

NSM argues that Mr. Whittington has not alleged, and cannot establish, that a representation was made to him about a material fact relating to the character or quality of the wheelchair. (Mot., PageID 36.) For the same reasons as discussed above when the Court concluded that Mr. Whittington did not sufficiently plead a failure to conform theory of manufacturer liability (*see supra*, Section III(A)(iv)), the Court concludes that Mr. Whittington's failure to conform theory against NSM as a supplier also must fail. Mr. Whittington identifies no representations about the wheelchair, nor how the wheelchair failed to conform to the alleged representation and his claim fails as a matter of law.

### ii. Derivative Supplier Liability

Derivative liability under the OPLA allows a plaintiff to hold a supplier liable in place of the manufacturer, if the manufacturer would be subject to liability under one of the four theories of defect contemplated by the OPLA and if one of the eight conditions listed under Ohio Revised Code § 2307.78(B) applies. *Broughton v. Shoe Show, Inc.*, No. 1:20-cv-261, 2022 U.S. Dist. LEXIS 176455, at *23 (S.D. Ohio Sep. 26, 2022) (Litkovitz, M.J.).

As the Court discussed above, Mr. Whittington has failed to plausibly allege that the manufacturer of his wheelchair could be subject to liability under one of the four theories of defect contemplated under Ohio Revised Code § 2707.73. (*See supra,* Section III(A).) Since he does not plausibly allege the former (manufacturer liability), the Court need not address the latter (eight conditions under § 2307.78(B)). Mr. Whittington failed to plead a derivative products liability claim against NSM as a supplier under Ohio Revised Code § 2307.78.

The factual allegations, accepted as true, do not allow the Court to draw the reasonable inference that NSM is liable as either a supplier or manufacturer under the OPLA. *See Iqbal,* 556 U.S. at 678. Thus, the Complaint fails to state a plausible claim for relief. *See id.*

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** NSM's Motion to Dismiss (ECF No. 5). Mr. Whittington's Complaint is **DISMISSED** for failing to state a claim on which relief may be granted. The Clerk is directed to enter judgment and close this case.

    IT IS SO ORDERED.

<u>**2/14/2025**</u>                                                   <u>**s/Edmund A. Sargus, Jr.**</u>
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                         **UNITED STATES DISTRICT JUDGE**